**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| COMTECH EF DATA CORP., | ) | No. CV 06-1132-PHX-MHM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| RADYNE CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Currently before the Court is Special Master Robert Harmon's ("Mr. Harmon" or "Special Master") Report and Recommendation on claim construction (Dkt. #97); Defendant Radyne Corporation's ("Radyne") motion to modify the Special Master's Report and Recommendation pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure ("FRCP") (Dkt. #78); Plaintiff Comtech EF Data Corporation's ("Comtech") motion to adopt the Special Master's Report and Recommendation with one modification pursuant to FRCP 53(f)(2) (Dkt. #76); Comtech's motion to strike the declaration of Roderick Kronschnabel (Dkt. #66); Comtech's motion to strike unsupported attorney argument regarding technical matters (Dkt. #68); and Comtech's motion to strike Radyne's reply memorandum (Dkt. #87). After reviewing the pleadings and the Special Master's Report and Recommendation, the Court issues the following Order.

///

///

1    **I.      PROCEDURAL HISTORY**

2          On April 21, 2006, Comtech filed suit against Radyne asserting a claim of patent

3    infringement against Radyne with respect to United States Patent No. 5,666,646 ("the '646

4    patent"), which claims a radio frequency (RF) converter system for transmission of

5    communication signals.  (Dkt. #1).  On October 17, 2006, based on a joint submission by the

6    Parties, the Court appointed Mr. Harmon to act as Special Master in this case pursuant to

7    FRCP 53 and conduct a <u>Markman</u> hearing in order to provide the Court with a recommended

8    construction of the asserted claims of the '646 patent.  (Dkt. #27).  The parties submitted

9    briefing on claim construction, and along with its reply claim construction brief, Comtech

10   filed two motions to strike, one directed at the declaration of Roderick Kronschnabel, one of

11   Radyne's expert witnesses, and the other directed at "unsupported attorney argument

12   regarding technical matters."  (Dkt. #s 66, 67).  The Special Master held the <u>Markman</u>

13   hearing on May 3, 2007 (Dkt. #97); and after the Special Master issued his Report and

14   Recommendation to the Court, the parties filed motions to adopt the Report and

15   Recommendation with certain modifications (i.e., objections).  (Dkt. #s 76, 78).  On May 29,

16   2007, Comtech filed a motion to adopt the Report and Recommendation with an objection

17   to the recommendation that claim 7 of the '646 patent be held invalid under 35 U.S.C. §112,

18   ¶ 2.  (Dkt. #76).  Then, on May 30, 2007, Radyne filed a motion to modify the Report and

19   Recommendation, objecting to the recommendations regarding the construction of the word

20   "when" and the applicability of 35 U.S.C. § 112, ¶ 6.  (Dkt. #78).  In addition, on May 31,

21   2007, Radyne filed a motion for summary judgment of non-infringement (Dkt. #79);

22   however, on February 21, 2008, the Court noted that Radyne's motion was premature and

23   denied the motion without prejudice and with leave to refile once the Court ruled on the

24   parties' objections to the Special Master's Report and Recommendation.  (Dkt. #98).

25   **II.     STANDARD OF REVIEW**

26

27         In reviewing the Special Master's Report and Recommendation, the Court reviews de

28   novo all objections to the findings of fact and/or conclusions of law made or recommended

by the Special Master.  See Fed.R.Civ.P. 53(g)(3)&(4).  In addition, the Court reviews matters of procedure for abuse of discretion.  See Fed.R.Civ.P. 53(g)(5).

The construction of the claims and terms in a patent is a question of law for the Court. Markman v. Westview Instruments, Inc., 52 F.3d 967, 983-84 (Fed. Cir. 1995).  "It is a 'bedrock principle' of patent law that 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted).  The terms in a patent's claims "are generally given their ordinary and customary meaning." Id. at 1312 (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "The ordinary and customary meaning of a claim is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." Id. at 1313.  A person of ordinary skill in the art "is deemed to read the claim not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

In cases where the ordinary meaning of claim language is not readily apparent to a lay judge, "the courts look to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" Id. at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (citation omitted).  The Court may also, in its sound discretion, receive extrinsic evidence to aid the Court in coming to a correct conclusion as to the true meaning of language employed in the patent. Markman, 52 F.3d at 980.  "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id.  However, extrinsic evidence is less significant than intrinsic evidence in determining the correct meaning of claim language, and it "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1317-18 ("[A] court should discount any expert

1    testimony that is clearly at odds with the claim construction mandated by the claims

2    themselves, the written description, and the prosecution history, in other words, with the

3    written record of the patent.") (citation and quotation omitted).

4

## II.    COMTECH'S MOTIONS TO STRIKE

6            On April 25, 2007, approximately two weeks prior to the May 3, 2007 <u>Markman</u>

7    hearing, Comtech moved the Court to strike the declaration of Roderick Kronschnabel and

8    a motion to strike "unsupported attorney argument regarding technical matters." (Dkt. #s 66,

9    67).  In its responses to Comtech's motions to strike, Radyne notes that the Special Master

10   considered Comtech's motions to strike in his Report and Recommendation and issued a

11   recommendation that the Court deny both motions to strike.  (Dkt. #s 71, 72).  In addition,

12   in its reply, Comtech states that it does not object to the Court adopting the Special Master's

13   recommendations denying its motions to strike the declaration of Roderick Kronschnabel and

14   to strike attorney argument regarding technical matters.  (Dkt. #73, p.2).  As such, having

15   reviewed the Special Master's recommendation to the Court to deny Comtech's motions to

16   strike, and finding the recommendation unopposed by the parties and supported by the

17   record, the Court denies Comtech's motions to strike.

18           In addition, on June 28, 2007, Comtech moved the Court to strike Radyne's reply

19   memorandum on its motion to modify the Special Master's Report and Recommendation.

20   (Dkt. #87).  Comtech contends that the Court's October 12, 2006 order did not authorize the

21   parties to file a reply memorandum in support of their FRCP 53(g) objections to the Report

22   and Recommendation.  (Dkt. #87, p.1).  Comtech notes that the Court's October 12, 2006

23   order merely refers to the parties' submissions of written objections to the Special Master's

24   Report and Recommendation and the parties' responses to those objections; the Court's order

25   does not address whether or not the parties' may file reply memorandum in the context of

26   objections to the Report and Recommendation (Dkt. #87, p.2; Dkt. #27, p.2).  In response,

27   Radyne notes that L.R.Civ. 7.2(d) states that "[t]he moving party, unless otherwise ordered

28

by the Court, shall have five (5) days after service of the responsive memorandum to file a reply memorandum if that party so desires."  (Dkt. #88, pp. 1-2).

The Court's October 12, 2006 order does not contemplate that reply memorandum would be submitted in the context of the parties' written objections to the Special Master's Report and Recommendation.  However, the Court notes that its order does not explicitly state that it would not accept and consider reply memorandum in this context.  Further, the Court notes that Comtech also filed a reply memorandum on its motion to adopt the Special Master's Report and Recommendation with one modification. (Dkt. #93).  As such, pursuant to L.R.Civ. 7.2(d), the Court will deny Comtech's motion to strike Radyne's reply memorandum and consider both parties' reply memorandum on the parties' motions to adopt and modify the Special Master's Report and Recommendation.

## III.   COMTECH'S MOTION TO ADOPT AND MODIFY THE SPECIAL MASTER'S REPORT AND RECOMMENDATION

Comtech moves the Court to adopt the Special Master's Report and Recommendation on claim construction of the '646 patent with one modification.  Specifically, Comtech objects to the Special Master's recommendation that claim 7 of the '646 patent be held invalid under 35 U.S.C. § 112, ¶ 2.  Comtech requests that the Court reject the Special Master's conclusion that the errors in claim 7 render the claim indefinite and invalid under 35 U.S.C. § 112, ¶ 2, and instead adopt Comtech's proposed corrections because the errors in claim 7 are obvious and not subject to reasonable debate in light of the patent specification, and thus are readily subject to correction.

A patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.  "The claims must use language definite enough to notify the public of the patentee's right to exclude."  Fargo Electronics, Inc. v. Iris Ltd., Inc., 2005 WL 3241851 at *3 (D.Minn. 2005) (citing Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005)).  Whether a claim is sufficiently definite involves the Court's duty of claim

construction; indefiniteness is a question of law for the Court. <u>See</u> <u>Atmel Corp. v.</u> <u>Information Storage Devices, Inc.</u>, 198 F.3d 1374, 1378 (Fed. Cir. 1999); <u>see also</u> <u>Process</u> <u>Control Corp. v. HydReclaim Corp.</u>, 190 F.3d 1350, 1356 (Fed. Cir. 1999) (stating that a court should attempt to construe patent claims to preserve their validity, reading them in light of the specification).

A claim must be held "invalid for indefiniteness [if] it is 'insolubly ambiguous' and not 'amenable to construction.'" <u>Novo Industries, L.P. v. Micro Molds Corporation</u>, 350 F.3d 1348, 1358 (Fed. Cir. 2003) (quoting <u>Exxon Research & Eng'g Co. v. United States</u>, 265 F.3d 1371, 1375 (Fed. Cir. 2001). However, a district court can correct errors in a patent "if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." <u>Id.</u> at 1357. As such, "certain obvious errors in the patent can be corrected by the district court in construing the patent." <u>Id.</u> at 1355; <u>see also</u> <u>Steven M.</u> <u>Hoffer v. Microsoft Corporation</u>, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents.").

If an error in a patent claim is obvious and apparent from the face of the patent, i.e., the patent specification and drawings, and the correction is not subject to reasonable debate or contradicted by the prosecution history, then a district court may correct the error. <u>Hoffer</u>, 405 F.3d at 1331; <u>see also</u> <u>Superior Fireplace Co. v. Majestic Products Co.</u>, 270 F.3d 1358, 1369-70 (Fed. Cir. 2001) (a correction of a clerical or typographical error that broadens the scope of coverage of a claim is allowed only where it is clearly evident from the specification, drawings, and prosecution history how the error should appropriately be corrected). In addition, "[a]bsent evidence of culpability or intent to deceive by delaying formal correction, a patent should not be invalidated based on an obvious administrative error." <u>Hoffer</u>, 405 F.3d at 1331.

Comtech states the errors in claim 7 were included "when the claim was amended in response to an office action." (Dkt. #76, p.2). Comtech's requested corrections involve certain written instances and placement of the terms radio frequency ("RF") and intermediate

frequence ("IF") that occur at the end of claim 7 in the '646 patent.  Specifically, Comtech requests that the Court change three instances in claim 7 of "inputted IF" to read "inputted RF" and two instances of "desired [outputted] RF" to "desired [outputted] IF."  For an example of Comtech's requested corrections to claim 7, see Exhibit 2 of Radyne's response in opposition to Comtech's instant motion (Dkt. #85).  Comtech states that there is no dispute that claims 1 through 6 of the '646 patent are directed to up converters for transmitting signals to a satellite, and in an up converter, the input is an IF signal and the output is an RF signal; and by the same token, Comtech states that claim 7 is directed to a down converter for receiving communication signals from a satellite, and in a down converter, the input is an RF signal and the output is an IF signal.  (Dkt. #76, p.2).  To support the proposition that claim 7 involves a down converter, Comtech cites the Court to both the patent specification that states that "down converters are used to receive communication signals from a satellite" and the preamble to claim 7 that it involves "[a]n RF converter system for receiving communication signals . . . ."  (Id.).  Also, in its reply, Comtech cites the Court to Figure 6 of the '646 patent to support its contention that the patent invention includes down converter systems within its scope.  (Dkt. #93, pp. 3-4).

The Special Master considered Comtech's requested corrections and concluded that claim 7 is insolubly ambiguous and cannot be construed as requested; the Special Master recommended that claim 7 be held invalid under 35 U.S.C. § 112, ¶ 2.[1]  Although the Special Master cited <u>Novo</u> and recognized the Court's authority to correct a patent on its own, in making his recommendation the Special Master relied on <u>Process Control</u> for the proposition that "when an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claimed invention must be held inoperable, pursuant to 35 U.S.C. §§ 101 and 112."  (Report and Recommendation, Dkt. #97, p.23).  As such, the Special Master concluded the following:

---

[1]However, the Special Master nevertheless construed the various elements of claim 7 along with those of the other claims "[a]gainst the possibility that the Court may disagree with [the Special Master's] recommendation" on this issue.

1

2

3

4

5

6

7

> In the view of the [Special Master], the present situation falls squarely within the rationale of <u>Process Control</u>. The only reasonable construction of claim 7 is that it contains internal inconsistencies that render it inoperative and nonsensical.  One cannot, by looking at the intrinsic evidence of record, conclude that the correction proposed by Comtech is 'not subject to reasonable debate,' within the meaning of <u>Novo</u>.  Clearly, there are at least two possible corrections that would render the claim amenable to construction: the claim could be rewritten to make all references read "inputted RF" or alternatively to make them read "inputted IF."  Nor does Comtech point to anything in the prosecution history that compels one such revision over the other.  Thus, Comtech cannot meet the limited circumstances outlined in Novo that might permit the Court to redraft the claims.

8

(Dkt. #97, pp. 23-24).  The Court disagrees with this conclusion and recommendation.

9

10

Comtech does not disagree with the Special Master's conclusion that claim 7, as written, is inoperative and nonsensical.  Further, there is no indication that the prosecution history of the '646 patent suggests any particular interpretation of claim 7, and thus the prosecution history appears to have no apparent effect on the proposed corrections.  As such, the question regarding whether Comtech's proposed corrections to claim 7 are appropriate revolves around the first prong in <u>Novo</u>, i.e., whether the correction is subject to reasonable debate based on consideration of the claim language and the specification.

11

12

13

14

15

16

First, the Court notes that <u>Process Control</u> stands for the proposition that if a claim term is susceptible to only one reasonable interpretation, and that interpretation makes the claim nonsensical, then the claim is invalid.  See <u>Banyan Licensing, L.C. v. Orthosupport Intern., Inc.</u>, 34 Fed.Appx. 696, 698 (Fed. Cir. 2002).  However, <u>Process Control</u>, which preceded <u>Novo</u>, is distinguishable and not dispositive on the facts of this case.  <u>Process Control</u> involved a patentee's argument that the exact phrase that appeared in two different claim limitations had two different meanings within the same claim; the court rejected that argument and held that the phrase used in the same way in the same claim had to be interpreted in the same way, and under that construction the claim made no sense and was thus invalid.   190 F.3d at 1356-58.  <u>Process Control</u>, unlike <u>Novo</u>, did not involve a patentee's request to correct errors in a patent and thus whether the patentee's proposed correction is susceptible to  to reasonable dispute.  Indeed, the Special Master's reference to the Federal Circuit's statement in <u>Process Control</u> that "we do not permit courts to redraft

17

18

19

20

21

22

23

24

25

26

27

28

claims" is applicable to this case only insofar as Comtech's proposed corrections are viewed as an attempt to redraft claim 7 as opposed to an attempt to correct errors that are obvious and not subject to reasonable debate under <u>Novo</u>.

Here, Comtech does not contest the fact that claim 7, as written, makes no sense and describes a system that would not be operative for "receiving communication signals." Instead, Comtech proposes to rectify the nonsensical nature of claim 7 by having the Court rewrite the claim, by construction, pursuant to the standard set forth by the Federal Circuit in <u>Novo</u>. As such, the Court rejects the Special Master's recommendation to the extent that the Special Master relied on the Federal Circuit's decision in <u>Process Control</u> to support his conclusion that Comtech's proposed correction to claim 7 of the '646 patent is subject to reasonable debate based on a consideration of the claim language and specification. However, the Court must still address the Special Master's conclusion that one cannot conclude that Comtech's proposed correction is "not subject to reasonable debate" by looking at the intrinsic evidence of the patent within the meaning of <u>Novo</u>, and that "there are at least two possible corrections that would render the claim amenable to construction: the claim could be rewritten to make all references read 'inputted RF' or alternatively to make them read 'inputted IF.'"

In its response, Radyne asks the Court to reject Comtech's proposed correction and adopt the Special Master's recommendation that claim 7 be held invalid. Radyne contends that Comtech offers no evidence to support a finding that the errors in claim 7 were due to administrative error (Dkt. #85, p.2); that the holding in <u>Novo</u> and its progeny provides no support for Comtech's proposed correction (id.); that Comtech made no effort to correct the patent for nearly ten years (id. at p.6)[2]; that Comtech's proposed correction would result in

---

[2]The Court notes that both Radyne and the Special Master refer to the fact that "Comtech has let ten years go by without making any effort at correction [of the '646 patent] by proper means." (Dkt. #97, p.25). However, there is nothing in the record or the prosecution history of the '646 patent to suggest that Comtech was aware of the error in the patent prior to the onset of this litigation. In addition, neither Radyne nor the Special Master cite any authority to indicate that the fact that Comtech did not correct the error in the '646

1   surprise and unanticipated broadening of the scope of the '646 patent (id. at p.3).

2   Specifically, Radyne contends that Comtech's proposed correction is subject to reasonable

3   debate, because there are two equally plausible choices to correct the claim language in claim

4   7: (1) the last three references to "inputted IF" can be changed to "inputted RF" and the last

5   two references to "desired RF" can be changed to "desired IF" (id., Exhibit 2); or (2) the first

6   four references to "inputted RF" can be changed to "inputted IF" and the first three

7   references to "desired IF" can be changed to "desired RF" (id., Exhibit 1). Radyne states that

8   Novo does not support Comtech's proposed correction because in Novo, the Federal Circuit

9   reversed a district court because the lower court did not have the authority to correct a patent

10  claim by changing the word "a" to "and." (Id. at p.2). In addition, Radyne states that Fargo

11  Electronics, 2005 WL 3241851 (D.Minn. 2005), among other cases, supports its contention

12  that "this Court would have to engage in conjecture in attempting to select between the

13  corrected version of claim 7 proposed in Radyne Exhibit 1 and the corrected version of claim

14  7 in Radyne Exhibit 2." The Court disagrees.

15        The Special Master stated that "Claims 1 and 3-5 are directed to a radio frequency

16  (RF) converter system 'for transmission of communication signals.' In keeping with this

17  functional purpose, the various claimed elements of the system refer to such functions as

18  'modulating an inputted intermediate frequence (IF) and outputting a desired RF.' Claim 7,

19  on the other hand, is directed to an RF converter system 'for receiving communications

20  signals.'" (Dkt. #97, p.21). As such, the Special Master stated that "[n]aturally and logically,

21  then, one would expect the functional language [in claim 7] to be the reverse of that in claims

22  1 and 3-5, e.g., 'modulating an inputted RF and outputting a desired IF.' And so it is, at least

23  for the first part of claim 7. But this concordance does not persist throughout the entire

24  claim." (Id.). Based on comparison of claims 1 and 3-5 and claim 7, the Special Master

25  concluded that "[i]t is clear that a mistake was made, and that the claim drafter doubtless

26

27  patent within the last ten years is either dispositive or compelling with respect to the Court's
    authority under Novo to correct an obvious error in a patent claim that is not subject to
28  reasonable debate.

1    intended claim 7 to be functionally consistent throughout, one way or the other."  (Id. at

2    p.22).  Thus, since the prosecution history does not suggest a particular correction one way

3    or the other, the question boils down to whether the patent claims, specification, and

4    drawings clearly establish that Comtech's proposed correction is not subject to reasonable

5    debate.

6          The specification and drawings in the '646 patent clearly indicate, as the Special

7    Master recognized, that the '646 patent contemplated an RF converter system that involved

8    both up converters (used to transmit communication signals) and down converters (used to

9    receive communication signals from a satellite).  (Dkt. #93, pp. 3-4; Dkt. #97, p.15).  In fact,

10   as Comtech points out, Radyne also recognized that claim 7 was directed to a down converter

11   system, as Radyne stated in the parties' February 2007 Joint Claim Construction and

12   Prehearing Statement that "[c]laim 7 is directed to a down converter system, and as such, the

13   claim limitation [monitor/control means] should properly refer to 'said inputted RF' (the

14   higher frequency), not IF (the lower frequency)."  (Dkt. #93, p.4).  As such, Radyne's

15   previous statements, as well as specification and drawings in the '646 patent, which states

16   that "FIG. 6 shows a simplified block diagram of one embodiment of the distributed

17   switching RF down converting system of the present invention" (U.S. Patent No. 5,666,646),

18   foreclose Radyne's present argument that Comtech's proposed correction would result in

19   surprise and unanticipated broadening of the scope of the '646 patent**.**

20         As for Radyne's contention that there are two equally plausible ways of correcting

21   claim 7, Radyne states that just because claim 7 starts off with the words "[a]n RF converter

22   system for receiving communication signals," doesn't mean that the claim must be changed

23   so that the input is always an RF signal because the patent specification states that RF up-

24   converters receive communications as well, i.e., they receive IF signals and output RF

25   signals, and thus claim 7 could refer to an up-converting system rather than a down-

26   converting system.  (Dkt. #85, p.9).  Although Radyne is correct that an up-converting RF

27   converter system for transmission of communication signals, such as that described in claim

28   1 and 3-5 of the '646 patent, receives communication signals, i.e. receives IF signals and

outputs RF signals, the use of "[a]n RF converter system for receiving communication signals" in the preamble to claim 7 clearly indicates that the use of "receiving" in that context refers to a down-converting system, and not the actual function of receiving any particular signal, just as the use of "[a] radio frequency (RF) converter system for transmission of communication signals" in the preamble to claim 1 clearly refers to an up-converting system. If the Court were to hold otherwise, then the Court would read out of the '646 patent any claim of a down-converting system, which is clearly contemplated and indicated by the patent specification and drawings.  In addition, Radyne's suggested alternate correction would blur any distinction whatsoever between claims 1 and 3-5 and claim 7, thus rendering claim 7 superfluous and unnecessary; in essence, Radyne's suggested alternate correction would convert Figure 6 into Figure 1.  As such, although the Court accepts Radyne's contention that there are theoretically two possible ways to correct claim 7 in the '646 patent, the Court finds that the patent specification and diagrams in the '646 patent, clearly establish that the Court need not engage in conjecture to find that Comtech's proposed correction is the only reasonable correction, and thus not subject to reasonable debate.

In addition, contrary to Radyne's contentions, the holdings in Novo and its progeny do not mandate a finding that Comtech's proposed correction, in light of the patent specification and diagrams, is subject to reasonable debate.  In Novo, the Federal Circuit stated that although a court could correct certain obvious errors in a patent if the correction was not subject to reasonable debate and the prosecution history did not indicate otherwise, the facts of the case, as well as the figures of the patent, did not support correction because there were multiple ways that the error could be corrected, including adding any number of words to the claim, which would then provide clarity and make the claim unambiguous. However, here, there are only two possible corrections that theoretically could be made, one of which the Court finds clearly unreasonable in light of the patent specification and diagrams.

In addition, in Fargo Electronics, the district court rejected the plaintiff's proposed correction because although the proposed correction was consistent with the language of the

claims and specification, it found that it was not the only reasonable correction since the claim's language was broad and it was natural to read the claim as encompassing more than the limiting construction that plaintiff's proposed correction would place on the claim. However, as with <u>Novo</u>, this case is inapposite because here there is only one other theoretical correction, and, as stated by the Special Master, Plaintiff's proposed correction is the natural and logical correction in light of claim 7's interaction with claims 1 and 3-5 and the patent specification and diagrams.

This is not a case that involves a proposal to correct an incomplete phrase or an attempt to add some unknown missing word. This case is much more akin to <u>I.T.S. Rubber Co. v. Essex Rubber Co.</u>, 272 U.S. 429, 442-43 (1926), where the Supreme Court upheld a district court's decision to add the word "rear" to a claim because it had appeared in other claims in the patent and its addition was not a re-making of the claim since if the Court were to construe the claim not to include the word "rear," then the claim would not read on the specification and drawings of the patent. <u>See Novo</u>, 350 F.3d at 1355. Here, Comtech's proposed correction to the errors in claim 7 was clearly and naturally intended to be the reverse of that in claim 1and is not a remaking of the claim because it is the only reasonable correction of the two possible corrections in light of the patent specification and diagrams that clearly indicate that the patent encompasses a down-converting system that takes inputted RF and outputs desired IF. Like in <u>Essex</u>, if the Court did not adopt Comtech's proposed correction in this case, then claim 7 would not read on the specification and drawings of the '646 patent. Accordingly, for the reasons stated above, the Court will not adopt the Special Master's proposed construction and will sustain Comtech's objection to the Report and Recommendation and correct claim 7 of the '646 patent in accordance with Comtech's proposed correction.

**IV.     RADYNE'S MOTION TO MODIFY THE SPECIAL MASTER'S REPORT AND RECOMMENDATION**

1    Radyne objects to the Special Master's Report and Recommendation on claim

2  construction of the '646 patent with respect to (1) the Special Master's construction of the

3  term "when"; and (2) the Special Master's Report and Recommendation concerning the

4  applicability of 35 U.S.C. § 112, ¶ 6.

5        **A.    The Term "When"**

6    Radyne objects to the Special Master's recommendation that word "when" be given

7  the meaning "promptly and automatically" when used in the phrase "when said fault is

8  detected," but that it be given the meaning "after" when used in the phrase "when said first

9  RF converter means is cleared of said fault." (Dkt. #78, p.2; Dkt. #97, p.54). The specific

10  portion of claim 1 at issue here is the following:

> [S]witching means for switching said inputted IF and said desired RF from
> said first RF converter means to said backup RF converter means <u>when</u> said
> fault is detected on said first RF converter means and from said backup RF
> converter means back to said first RF converter means <u>when</u> said first RF
> converter means is clear of said fault.

14  (Dkt. #83, p.4) (emphasis in original). Radyne contends that the Special Master erred in

15  concluding that the two instances of the word "when" in the context of "switching means"

16  limitation of claim 1 should be given two different meanings because "case law [dictates] that

17  the same word should normally be given the same meaning everywhere it appears in a set of

18  patent claims, even if it appears only once in different individual patent claims." (Dkt. #86,

19  p.2).[3] Specifically, Radyne contends that the word "when," as used throughout the '646

20  patent, should be given the meaning "promptly and automatically." (Id., pp. 3-4).

21    Radyne cites the Court to <u>Fin Control Sys. Pty., Ltd. v. OAM, Inc.</u>, for the proposition

22  that a "presumption that the same terms appearing in different portions of the claims should

23  be given the same meaning <u>unless it is clear</u> from the specification and prosecution history

---

[3]The Court notes that Radyne seems to ignore its own statement that "the same word
should <u>normally</u> be given the same meaning." (Dkt. #86, p.2) (emphasis added). As such,
Radyne appears to recognize that the Court is not foreclosed from determining whether a
particular word should be given a different meaning depending on the context in which it is
used if such a construction is warranted by the claim language and the patent specification.

that the terms have different meanings at different portions of the claims." 265 F.3d 1311, 1318 (Fed. Cir. 2001) (emphasis in original). However, the Special Master addressed this specific argument and quotation from <u>Fin Control</u> in his Report and Recommendation. The Special Master concluded that the <u>Fin Control</u> presumption "is readily overcome in this case by [ ] the patent specification." (Dkt. #97, p.54). The Special Master noted that "[o]bviously the word 'when' has many meanings, and to select 'as soon as' or promptly' would require some rational basis in the intrinsic evidence." (Id. at p.53). To support his conclusion, the Special Master referenced the following passage from the specification of the '646 patent:

> When a fault occurs on one of the online RF up converters 10, the IF and RF transfer switches 12A, 12B switch the IF input and the RF output of the faulted online RF up converter 10 to the backup RF up converter 32. The faulted RF up converter 10 can now be removed from the redundant RF up converting system 30 by separating the RF up converter 10 from its I/O switch leaving the active redundant RF up converting system 30 intact through the I/O switch.

(Dkt. #97, p.53). The Special Master concluded that this passage "clearly implies that, in the event a fault is detected, the system will automatically and promptly switch over to the backup RF converter. But it also implies that, in order to clear the fault, it may well be necessary to remove the faulty RF converter from the system, and perhaps replace it with another. This would of course require human intervention. And after that removal and replacement, the new or repaired RF converter would be switched back into the system, either automatically or manually. Obviously, the need for haste is not critical at this end of the operation, as opposed to the initial switchover upon detection of fault." (Dkt. #97, pp. 53-54). As such, the Special Master concluded that the presumption that the same word be given the same meaning throughout the claims of the patent is readily overcome by intrinsic evidence, i.e., the patent specification. The Court agrees.

Radyne argues that the Special Master's citation to the patent specification does not establish that it is clear from the patent specification that the word "when" should be given two different meanings in the different contexts in which it is used in claim 1. Radyne states that "[t]he Special Master seemed to confuse the question of <u>how</u> a fault may be cleared with the question of <u>when</u> the switching means switches the backup converter means back out of

1   the system.  The Special Master seemed to read the [patent specification] as suggesting that

2   a faulted prime converter must be removed in order to clear a fault."  (Dkt. #86, p.5)

3   (emphasis in original).  However, the Special Master simply recognized that the quoted

4   patent specification clearly contemplates that human intervention <u>may be</u> necessary in order

5   to clear a fault, not that it always is required in order to clear a fault.  As such, the Special

6   Master recognized that the patent specification clearly indicates that the use of the word

7   "when" in the context of "when said first RF converter means is cleared of said fault" does

8   not have the same urgency and immediacy that is required by the use of the word "when" in

9   the context of "when said fault is detected."  The Court agrees with the Special Master that

10  the word "when" is used in two distinct contexts in claim 1, one context in which the patent

11  specification clearly establishes that immediacy is required, and a second context that

12  indicates that human intervention may be required and thus immediacy is not necessary.  The

13  patent specification forecloses Radyne's argument that one could reasonably read the word

14  "when" in the context of "when said first RF converter means is cleared of said fault" to

15  mean that the backup converter must be switched out immediately after the fault is cleared

16  from the system.  Accordingly, the Court overrules Radyne's objection to the Report and

17  Recommendation in this respect.

18          **B.     The Legal Test Under 35 U.S.C. § 112, ¶ 6**

19          Radyne also objects to the Special Master's recommendation that six of the ten claim

20  limitations that included the word "means" recited sufficient structure to overcome the

21  presumption that they are "means plus function" ("MPF") elements governed by 35 U.S.C.

22  § 112, ¶ 6.  Specifically, Radyne contends that "the Special Master did not follow the correct

23  rule that should apply when there is a presumption that [35 U.S.C. § 112, ¶ 6] does apply

24  because the word 'means' is used in the claim."  (Dkt. #86, p.6).  In opposition, Comtech

25  states that the Special Master did apply the appropriate test and conduct the appropriate legal

26  analysis to determine whether claim limitations including the word "means" recited sufficient

27  structure to overcome the presumption that they are "means plus function" elements under

28  35 U.S.C. § 112, ¶ 6.  In reviewing the Special Master's Report and Recommendation, the

1   Court finds that the Special Master applied the correct legal test under 35 U.S.C. § 112, ¶ 6

2   and that the his findings are without error.

3        As noted by the Special Master, "[a]n element in a claim for a combination may be

4   expressed as a means or step for performing a specified function without the recital of

5   structure, material, or acts in support thereof, and such claim shall be construed to cover the

6   corresponding structure, material, or acts described in the specification and equivalents

7   thereof."  35 U.S.C. § 112, ¶ 6.  The Special Master stated that:

8            Section 112, ¶ 6 operates to cut back on the types of means that could literally
             satisfy the claim language to only the disclosed structure or acts and
9            equivalents thereof.  But unless there is a clear basis for it in the record, it is
             improper to limit a MPF claim to the particular means set forth in the
10           specification.  Patentees are required to disclose in the specification some
             enabling means for accomplishing the function, but there is no requirement
11           that applicants describe or predict every possible means of accomplishing that
             function. . . . Accordingly, each MPF limitation will be construed to cover the
12           actual structure or acts shown in the specification for accomplishing the recited
             function, and equivalents thereof. . . . If the word 'means' appears in a claim
13           element in association with a function, the court presumes that § 112, ¶ 6
             applies.  This presumption collapses, however, if the claim itself recites
14           sufficient structure, material, or acts to perform the claimed function.  Without
             the term 'means,' a claim element is presumed to fall outside MPF strictures.
15           Once again, however, that presumption can collapse when an element lacking
             the term 'means' nonetheless relies on functional terms rather than structure
16           or material to describe performance of the claimed function. . . . Once a court
             establishes that a MPF limitation is at issue, it must construe that limitation,
17           thereby determining what the claimed function is and what structures disclosed
             in the written description correspond to the 'means' for performing that
18           function.

19   (Dkt. #97, pp. 13-15).   As such, the Special Master correctly noted that there is a

20   presumption of the application of § 112, ¶ 6 that is created by the use of the word "means"

21   in conjunction with a claim term, and that that presumption may be rebutted if: (1) the claim

22   element that uses the word "means" recites no function corresponding to the means, or (2)

23   the claim element also recites sufficient structure or material for performing the function.

24   Rodime PLC v. Seagate Tech, Inc., 174 F.3d 1294, 1302 (Fed. Cir. 1999) (citation omitted);

25   see also Biomedino, LLC v. Waters Technologies Corp., 2007 U.S.App. LESIX 14303, at

26   *7-8 (Fed. Cir. 2007) ("This presumption can be rebutted when the claim, in addition to the

27   functional language, recites structure sufficient to perform the claimed function in its

28   entirety.").   In addition, to determine whether a claim itself "recites sufficient structure" to

- 17 -

1    perform the claimed function in its entirety and thus avoid application of § 112, ¶ 6, the

2    Special Master correctly cited <u>Lighting World, Inc. v. Birchwood Lighting, Inc.</u>, 382, F.3d

3    1354, 1350 (Fed. Cir. 2004) for the proposition that "it is sufficient if the claim term is used

4    in common parlance or by persons of skill in the pertinent art to designate structure, even if

5    the term covers a broad class of structures and even if the term identified the structures by

6    their function." (Dkt. #97, pp. 19-20).   In the instant case, the Special Master determined

7    that the § 112, ¶ 6 presumption was raised but rebutted in six out of the ten instances because

8    the claims recite sufficient structure as the described structure is capable of performing

9    entirely the recited function.

10    In essence, Radyne relies on the proposition that "§ 112, ¶ 6 applies unless there is

11    structure recited within the claim itself to perform '<u>entirely</u>' the claimed function" (Dkt. #86,

12    p.8) (emphasis added).   The Court agrees that this is the appropriate test under Federal

13    Circuit precedent, as indicated by Radyne in its reply brief. (Dkt. #86, pp.8-9).   However,

14    the Court does not agree with Radyne that the Special Master did not correctly apply this test

15    and consider whether there was sufficient structure recited within the claims at issue to

16    perform entirely the claimed function.   Indeed, Radyne appears to contend that the Special

17    Master erred in relying on expert testimony and the standard set forth above in <u>Lighting</u>

18    <u>World</u> to determine whether a claim term recites sufficient structure to rebut the § 112, ¶ 6

19    presumption because that case dealt with a reverse presumption, i.e., that case involved a

20    presumption that § 112, ¶ 6 did not apply because the term "means" did not appear in the

21    claim element.   (Dkt. #78, p.12).   However, in <u>Personalized Media Communications v.</u>

22    <u>International Trade Com'n</u>, the Federal Circuit rejected the distinction between regular

23    presumptions and reverse presumptions under § 112, ¶ 6 and stated that "[i]n deciding

24    whether <u>either</u> presumption has been rebutted, the focus remains on whether the claim as

25    properly construed recites sufficiently definite structure to avoid the ambit of § 112, ¶ 6."

26    161 F.3d 696, 704 (Fed. Cir. 1998) (emphasis added); <u>see also</u> <u>Technology Licensing Corp.</u>

27    <u>v. VideoTek</u>, 2002 U.S. Dist. LEXIS 26803 (N.D.Cal. 2002) ("Whether one starts with the

28    presumption that § 112, ¶ 6 does or does not apply, the test for whether that presumption has

1   been rebutted is the same.").  In determining whether the § 112, ¶ 6 presumption is properly

2   rebutted the Court considers "evidence intrinsic to the patent and any relevant extrinsic

3   evidence so warranted."  Personalized Media Communications, 161 F.3d at 704.  As such,

4   the Special Master did not err in determining whether the claims recite sufficient structure

5   to perform entirely the claimed function by considering how the claim term is used in

6   common parlance or by persons of skill in the pertinent art to designate structure, even if the

7   term covers a broad class of structures and even if the term identified the structures by their

8   function.

9          Specifically, Radyne contends that "[t]he Special Master's report does not go through

10   the analysis of (1) specifically identifying what the claimed function is, (2) identifying what

11   alleged structure is recited within the patent claim itself for performing that function, and (3)

12   discussing why the alleged structure within the claim itself is sufficient entirely to perform

13   the claimed function."  (Dkt. #86, p.9).  As an example of the Special Master's allegedly

14   incorrect analysis to determine whether the § 112, ¶ 6 presumption was rebutted, Radyne

15   references the Special Master's report on claim 1 and the element "RF converter means."

16   Radyne argues that two functions are claimed in this instance – (1) receiving the inputted IF,

17   and (2) modulating the inputted IF to the desired RF – and that the term "RF converter" does

18   not elaborate sufficient structure to perform entirely the recited function because "[a]

19   'converter' just takes one frequency and changes it to another frequency."  (Dkt. #86, p.10)

20   (emphasis in original).  Radyne cites the declaration of its expert witness, Roderick

21   Kronschnabel, to support the proposition that "you would need a converter to change the

22   frequency from one frequency to another, and a modulator to modulate the desired RF

23   signal," and thus the term converter by itself, without the term modulator, does not elaborate

24   sufficient structure to rebut the § 112, ¶ 6 presumption.  (Id.).

25          However, the Special Master's Report and Recommendation addressed and dealt with

26   Radyne's specific argument on this issue.  (Dkt. #97, p.31).  The Special Master stated that

27   Radyne's argument is "deceptively simplistic" because "[a]ny electrical engineer knows that

28   a 'frequency converter' can be a simple electromechanical or solid state device that does in

1   fact simply change one frequency to another without mixing or modulation.  But in the
2   context of this case, the subject of the '646 patent is frequency conversion at radio
3   frequencies, and such an engineer would naturally expect an RF converter to include circuitry
4   for mixing or modulating an RF signal with an inputted IF signal, or vice-versa."  (Id., p.31
5   n.59).  The Special Master further stated that Radyne's argument is "pointless in view of the
6   fact [ ] that the claims expressly require the RF converter means to include the classical
7   elements for RF modulation: a synthesizer, a reference oscillator, and 'converter means [. .
8   .] for receiving and modulating said inputted IF to said desired outputted RF.'" (Id., p.31).
9   As such, the Special Master properly applied and rejected the § 112, ¶ 6 raised by "RF
10  converter means," and concluded, based on the claim language itself, as well as information
11  in the declaration of Comtech's expert witness, Stephen Heppe, that an "RF converter" is a
12  well-understood structure in the relevant art that includes the function of "modulating"
13  without the need for specifically referencing a modulator as part of the structure.
14  Accordingly, the Court overrules Radyne's objection to the Report and Recommendation in
15  this respect.

16

17  **V.    SUMMARY**

18      The Court, based on de novo review, sustains Comtech's objection to the Special
19  Master's Report and Recommendation that claim 7 of the '646 patent is indefinite and should
20  be held invalid under 35 U.S.C. 112, ¶ 2.  Instead, the Court adopts Comtech's proposed
21  correction to rewrite the last three limitations of claim 7 of the '646 patent by switching
22  "inputted IF" and "desired RF" with "inputted RF" and "desired IF", as shown in Exhibit 2
23  of Radyne's response in opposition to Comtech's motion to adopt the Special Master's
24  Report and Recommendation with one modification.  (Dkt. #85).  In addition, the Court,
25  based on de novo review, overrules Radyne's objections to the Special Master's Report and
26  Recommendation and finds that the Special Master's construction of the term "when" and
27  application of the legal test for determining whether 35 U.S.C. § 112, ¶ 6 governs certain

28

1   claim elements of the '646 patent is supported by case law and the principles of claim
2   construction.

3        **Accordingly,**

4        **IT IS HEREBY ORDERED** that the Special Master's Report and Recommendation
5   on claim construction is adopted in part as the Order of the Court.  (Dkt. #97).

6        **IT IS FURTHER ORDERED** sustaining Plaintiff's objection to the Report and
7   Recommendation. (Dkt. #76).  Plaintiff's objection to the Special Master's recommendation
8   that claim 7 be held invalid under 35 U.S.C. § 112, ¶ 2 is sustained.

9        **IT IS FURTHER ORDERED** that Plaintiff's motion to adopt the Special Master's
10  Report and Recommendation with one modification is GRANTED.  (Dkt. #76).

11       **IT IS FURTHER ORDERED** overruling Defendant's objections to the Report and
12  Recommendation.   (Dkt. #78).   Defendant's objections to the Special Master's
13  recommendations regarding construction of the term "when" and the applicability of 35
14  U.S.C. § 112, ¶ 6 are overruled.

15       **IT IS FURTHER ORDERED** that Defendant's motion to modify the Special
16  Master's Report and Recommendation is DENIED.

17       **IT IS FURTHER ORDERED** that Plaintiff's motions to strike are DENIED.  (Dkt.
18  #s 66, 68, 87).

19       **IT IS FURTHER ORDERED** setting this matter for a status hearing on May 8, 2008
20  at 3:00 p.m. to discuss future proceedings in this litigation.

21       DATED this 31st day of March, 2008.

22

23

24  _____
          Mary H. Murguia
25       United States District Judge

26

27

28

- 21 -